Good afternoon, Your Honor. May it please the Court, my name is Michael W. Monk, with Music, Peeler & Garrett, and I'm appearing on behalf of petitioner Calmat Company. The Dept. of Labor in this matter reached a decision that Mr. Gurman was suspended wrongfully for reporting safety violations to the California Highway Patrol. Calmat Company appeals from that decision on three different grounds. The first ground is that the ALJ and the Dept. of Labor wrongfully, and in a manner that requires, that is reversible error, placed the burden on the employer rather than on the employee. The second argument deals with three instances of acknowledged admission of hearsay testimony, which we believe materially contributed to the decision, which also would require reversal. And the third argument we are making is that given a prior arbitration decision among the same parties, the Dept. of Labor should in fact have deferred to that decision on the basis of the deferral powers they have under the federal regulations in somewhat of a collateral estoppel theory, and that they wrongfully failed to do that. The first two arguments we make, if the Court were to agree to do that. Do you have any case that's held that the ARB abuses its discretion when it fails to defer to a grievance arbitrator's ruling? I do not have a specific case, Your Honor, that addresses that issue, but we do have the test under the federal regulation, 29 CFR section 1978.112, paren small a, paren 2, paren 2002, and we think that regulation provides ample basis that the failure properly to defer would be reversible error. If I may deal with the first issue in some detail, I want to make three points on the burden of proof argument. Number one, there are two tests that can be used in this kind of a matter. One is a pretext test, an analysis. The other is a mixed motive. My first point is that they are really very, very different tests, the primary difference being that in the pretext analysis, the employer says, I have a lawful reason for suspending this gentleman. The claimant or the employee says, no, there was really a discriminatory reason and that is why you took the action. And then the burden shifts back to the employee at the very end to show that it was the employer reason that was proffered was indeed a pretext. The mixed motive is much different because it assumes off the right out of the box that there is both a good motive and a bad motive and the question is, would they have taken the action even with the bad motive or even in the absence of the bad motive based on the good motive. Now, the second point I want to make, so a very different test. In pretext, it's the employee having the burden at the end. In the mixed motive, it is indeed the employer who must show we would have taken this action notwithstanding the improper reason we considered. Now, tell us why you think this is mixed motive? No, I don't, Your Honor. That's my second point. I'm glad you drew me to it. There is no dispute in this case that it is a pretext case. Neither party claimed either at the hearing, in the briefs to the ALJ, or in the briefs to the ARB itself, to the Department of Labor. Everybody agrees it was pretext. Well, now, what's the difference between the two? Let's get there. Yeah. Well, the difference is that a mixed motive sort of assumes from the start almost an admission that there is a bad motive that motivated the employer as well as a good. The employer said, well, I may have considered the fact that the employee was a certain racial group, but I still would have fired him anyway because he committed terrible misconduct. That's the argument. But the pretext case, it's simply the employer says, as we do in this case, that there was significant misconduct, that this employee terrorized another employee, used profanities with him, called him a racial slur, the term chihuahua, and took horrible action, told other employees that they should not do their work, they shouldn't clean their trucks. And that was why the employer fired him. Now, the — But there was also this business of whistleblowing. So doesn't that — That's correct, Your Honor. And that is what the employee says is, no, those were pretext reasons. Those were really why you fired me. You fired me because I made a report to the California Highway Patrol. So in that sort of a pretext case, which everybody agrees this is — Well, I guess this judge maybe can't tell the difference. Well, we would submit that it is a pretext case, that the Department of Labor is right about that, and indeed the ALJ is right about that, but they didn't apply the pretext analysis. Indeed, if you look at our brief, the Petitioner's brief at pages 18, 19 and 21, or our reply brief at page 6, there are multiple instances where the ALJ says the employer bears the burden of establishing by a preponderance of the evidence. Well, that's just wrong in a pretext case. And there are a series of similar comments there. So it is our belief the record is unambiguous that the ALJ and the ARB that adopted — the Department of Labor adopting that decision placed the burden on the employer, that we had to show we would have terminated this fellow even had there not been a wrong motive. And that isn't the analysis in a pretext case. So, again, the — it's very clear the burden was wrongfully placed on the employer. Now, there is also authority — Were your workers working beyond the safety limit? Yes, Your Honor. There were — And you didn't know about it until he told you? That's correct, Your Honor. Normally, in those circumstances, somebody is rewarded. Well — Think of the danger that could happen to the company. I understand. That could happen on the I-15 Friday night. Yes. We agree completely, Your Honor. And the employer, CalMED, took the position at various proceedings that, indeed, they welcome these complaints so we can find out what we're doing wrong and not violate the law, because an employer certainly gets in much bigger trouble violating the law than complying with it. So that, in our view, wasn't the reason we would terminate him. We terminated him for the fairly egregious set of things he did to a single employee and telling people not to work. So then you have to engage in a meritorious conduct in relationship to a conduct which is not nice? That's correct, Your Honor. We have to weigh. That was a classic pretext case. This case weighed meritorious against the other and said that the meritorious won. Well, that's correct if you place the burden where it should be. And just as you described, the employee would say in a pretext case, no, they actually fired me because I made these reports. And then the employer responds, as we did, no, the reports had nothing to do with it. Indeed, that's positive behavior. We fired you for a series of misconduct, which was very serious. Then it is the final burden. That's the key here. The final burden is on the employee to say, no, that was a pretext. That wasn't really the motivation that caused you to take this action. And that final burden legally, under a pretext analysis, there's no question, has to be on the employee to show. And in this case, the ALJ. The burden of proof is always on the employee. I mean, the burden of persuasion and what you're talking about is the burden of coming forward with evidence. But, you know, hit things don't work that way, you know, like a little stage dance. You know, you bow and then you miss your turn and all of this. I mean, that's artificial. And is there any reason for us to think that the the ultimate burden of proof was not on the employee? Yes, Your Honor, there is. And those are the citations we make in our brief at pages 18, 19, 21. And in our reply brief at 6, 7, there are very explicit statements in the decision that clearly placed the burden on the employer. The employer failed to show by a preponderance of the evidence. We cite those. And that is, again, reversible error. There are two cases we cite in our reply brief at page 7. The Carvalho versus Raybestos Manhattan case and a Ninth Circuit case, the California Sansum Company versus U.S. Giftson, both of which say to improperly shift the burden of proof is reversible error. And that is our belief that very clear that the parties agree it's a pretext analysis. Under a pretext analysis, the burden, the final burden is on the employee. And in this case, the ALJ wrongfully placed that burden and shifted it in a reversible manner to the employer. Let me address briefly the second issue, if I may, Your Honor. The second issue is hearsay. There are three instances of hearsay, hearsay by a fellow named Robert Singel, hearsay by a fellow named Alan Buckley, and hearsay by a third employee by the name of Jeff Winkler. Now, the Department of Labor, in its brief and in the final decision in this case, acknowledges that each of these three involved hearsay testimony, but they claim it somehow was, didn't, was harmless error. Now, the test for hearsay to be a reversible matter is that it must affect a substantial right. This is all under 29 CFR section 18.103. But if that hearsay materially contributes to the decision, that then is a reversible error situation. Now, Mr. Singel testified that another employee had used a racial epithet with him. And then testified that, and they said, well, was he suspended for that, like Mr. Gurman was? He said, well, I don't really know. I heard from somebody. And in short, hearsay testimony that, indeed, this other fellow was not suspended. Well, that is one instance. Even worse is the Alan Buckley testimony, where he is the only source of evidence saying that another supervisor called him a racial slur, and that, indeed, that other supervisor wasn't suspended. Now, the Department of Labor, in their brief, says, well, this is harmless error. And, in fact, it's not even hearsay because it wasn't used to prove the truth of the matter asserted. But the only evidence in the entire case of the use of a racial epithet and of the lack of a suspension is this single employee's testimony, Alan Buckley. It clearly has to be hearsay. Without it, there's no evidence in the record that there was a racial slur used by Mr. Hartwell. And, indeed, Buckley says he doesn't really know what happened, but he kind of saw Hartwell at work. Therefore, he must not have been suspended. Again, speculation and hearsay. And the real thrust of this argument, if I may, with the Court, is that the ALJ made disclaimers saying, well, I'm not – I let it in and it was a mistake, but I'm not going to rely on it. But then they clearly did rely on the evidence, as is pointed out in our brief. Indeed, even the Department of Labor itself, receiving the ALJ decision, makes an attack on the hearsay that they admit is error, and then they turn around later in the decision and cite the precise hearsay testimony to support the decision. This is discussed in our brief at page 28. Since my time is running out, I would like to focus on the third issue, and this is the failure to defer to the arbitration. There is national policy for deferral to arbitrations to reduce court caseloads, obviously. And the test under 29 CFR 1978.112 is, did the arbitration deal with all the factual issues? Was it fair, regular, and free from any sort of procedural infirmity? And then finally, did it have a result that was not repugnant to the purposes of the Act? Well, we argue that in this case, each of those three situations existed. Virtually, as we pointed out in our brief, virtually all the same witnesses had testified at the arbitration, and then later testified at the Department of Labor proceeding. Indeed, Gurman himself aggressively and affirmatively raised the issue that he later litigated with the Department of Labor when he said at hearing, Since I filed the CHA complaint, I believe I have been a marked man. And that testimony is set out in full in our reply brief at page 15 and 16. This was his major argument in the arbitration. He thought he was a marked man after he filed the CHP complaint. The arbitrator, however, didn't find him credible, didn't believe a lot of his testimony, and found significant evidence that, indeed, it was this wrongdoing. It was his racial slur against another employee, his quasi-assault on the racial – on the other employee that had caused the suspension. Now, the arbitration was also fair and regular. It was free from any procedural irregularities. There was a three-person panel who heard the arbitration. There were roughly 10, 15 witnesses who testified. There were documents introduced. There were opening statements. There were closing arguments. There were briefs that were submitted. The arbitration was transcribed by a reporter. And, indeed, there was a 20-page written opinion by the arbitrator. So it was entirely an appropriate, you know, proceeding. It was free from error. Finally, the outcome of the proceeding wasn't repugnant to the Act, because what the arbitration held is this employee was properly fired for a series of egregious misconduct. And it certainly doesn't defend the Act. It's not repugnant to the Act. To fire an employee for threatening other employees, for profanity and racial epithets, for telling other people not to do work, which was part of the basis of it, for telling people not to clean their trucks – this was a concrete company – and for an actual physical assault to another employee. So clearly, there was nothing repugnant to the Act there. So, Your Honors, we would argue that each of these three errors by itself should cause the vacation of the decision. The arbitration argument, the final argument, should – if you agree with that argument, we believe the Court should simply declare that that should have been the Act and defer to that arbitration, and that would end the matter. The other two arguments, should you believe they have merit, we would argue require the reversal of this and a new hearing be held. And I'd like to save my four minutes for rebuttal, if I may. Thank you, Your Honor. Thank you. Good afternoon, Your Honors, and may it please the Court. The Court should affirm the Administrative Review Board's final decision in order in this case. The ARB found that CalMet suspended Robert German in violation of the Surface Because CalMet retaliated against German for complaining about the unsafe and illegal activities in which it is not disputed, CalMet ordered its truck drivers to engage. CalMet raises, as Mr. Monk points out, three arguments in support of its position that the ARB's decision should be reversed. First, the ARB found that the ALJ did not err, or that the ALJ did not improperly place the burden of proving retaliation on CalMet rather than on German. CalMet argues that this finding is incorrect. This argument lacks merit. I would point the Court to pages 3, 45, and 55 of the ALJ's decision where she made clear that she was placing the burden of proving retaliation on German and where the ALJ found that the moral ‑‑ that German was successful in proving ‑‑ Where is that on page 3 now? On page 3. Let me just get through it. It's right under the heading Pretext and Due Motive, the second paragraph. The plaintiff may prevail on his complaint of discriminatory suspension on a showing that the reasons for the suspension proffered by the Respondent were a mere pretext for discriminatory animus. She's clearly stating the legal standard there, that the burden of proof is on the employee and not on the employer. On page 45. I see that. Let me look at 45. It's right under Pretext and ‑‑ under Pretext and Due Motive Analysis. The first sentence, as indicated above, German can prevail if the preponderance of the evidence shows either the reasons given for the adverse actions against him were a mere pretext or if protected activities were the more likely reason for the adverse actions. Alternatively, German can prevail if he can show his protected activities were at least one of the motivating factors, i.e., dual or mixed motive, in the adverse actions, and CalMet fails to show by a preponderance of the evidence it would have taken the same adverse actions even in the absence of the protected activities. Page 55 is where the judge actually makes the ultimate finding. For all these reasons, the preponderance of the evidence ‑‑ Oh, I'm sorry. That's the last paragraph on page 55. The preponderance of the persuasive evidence indicates complainants' protected activities were the more likely reason for both adverse suspension actions. It is so found and concluded. It is also found and concluded on a weighing under the dual motive analysis that CalMet has not persuaded by a preponderance of the evidence that absent German's protected activities, the adverse suspension activities, actions would have occurred. CalMet in its argument relies solely, and as the Court can see from those three excerpts that I've just laid out, DLJ made alternative findings here. She made a pretext finding, a primary pretext finding, and then she made an alternative finding on the dual motive, under the dual motive analysis. A case can be both, can't it? Well, I think what the Costa v. Desert Palace case did was it essentially said ‑‑ it freed it up for the judge to say, I've heard all the evidence. What do I want to do here? Do I really believe this was a case of either or, or do I believe that maybe multitudinous factors, some legitimate, some nonlegitimate, motivated the company here in suspending or terminating or doing the adverse action against the employee? So I think that's exactly ‑‑ you're exactly right, Your Honor. I think in the end, the Costa court left it up to the judge to make that decision. Does that answer Your Honor's question? Well, yes and no. I think the way that the Costa court said it should proceed, prior to Costa, that that was decided in this court first and then by the Supreme Court. Prior to Costa, the plaintiff needed direct evidence of a nonlegitimate motive before using the dual motive analysis.  Prior to Costa, the Costa court said circumstantial evidence is very probative and it can be used in dual motive cases regardless of whether there's direct evidence. So from that perspective, the Costa court said the cases, the types of cases are actually very close. But really, this question, it's not important to this case because in the end, as the ARB found, the ALJ made the primary finding that this was a pretext case, that Calmat's allegedly legitimate reasons for suspending Gurman were pretextual and that the more likely reason for Gurman's suspension was, in fact, his protected activity. So Calmat ignores that and ignores the law on this issue in dual motive cases and exactly what the ALJ found, which was in dual motive cases, there's an affirmative defense, and that affirmative defense is that the employer has an opportunity to show that it would have taken the same adverse action in the absence of the protected activity. This is the only reference that the ALJ makes to a burden of proof on Calmat. And the quotes that Calmat references in its brief that Counselor Calmat listed during his presentation, those quotes talk about the affirmative defense that I'm talking about, that I'm discussing here. So Calmat's first argument lacks merit. In these employment cases, when the issue involves the public safety, which is this case, shouldn't that be taken into consideration in addition to the rigid rules about pretext and mixed dual cases? Could more weight be lawfully placed upon the fact that this case involved a public safety, rather than a racial or sex, age? I would argue, Your Honor, that. Or should we weigh them all the same? I would argue that race, sex, age cases have an important public policy relationship with the public safety. And I think that's a good example of this as well. I understand. Yeah. But, see, that involves just one person, maybe. The public safety involves you and me. The ARB has consistently applied Title VII to these stock cases. So the Title VII sort of analysis. So I don't think the analysis is different. I think, actually, the courts and the ARB have consistently said that this pretext analysis or dual motive analysis is the analysis that's used. Now, public safety is an important factor. Is it more important than gender? I don't think it is. I think both are based on. How about age? I don't think it's more important than gender or age. I think both are. How about old age? I don't think it's more important than old age. Oh, I'm sorry, Your Honor. Am I speaking too loudly? More important than old age or gender or sex or race. I think Congress decided to write a statute about public safety here. But should we weigh them all the same? I think so. I think, I think, yeah. I asked the question. You've got to get that answer on it. Yeah. Because they're all policies that Congress found it imperative to write statutes about, one being Title VII, ADA, ADEA, Pregnancy Discrimination Act. And another, in this case, is the style, which deals with public safety. Should we give any race judicata effect to the arbitration? Well, that's CalMet's third argument. That's an abuse of discretion standard, which is a very ‑‑ it's a very deferential standard. And the question is whether they err, be abused at discretion in refusing to defer to this grievance arbitration. Now, this argument of CalMet also blocks merit, because the courts in the Barantine Decision, which we cite in our brief, in the Roadway Express case, which we cite in our brief, in the Yellow Freight case, which we cite in our brief, and the ARB have laid out a standard, and neither the ALJ nor the ARB abuse that standard. The ARB properly found that it was not clear from the arbitration decision that the arbitration dealt adequately with all factual issues. The arbitration panel chairman, who decided the arbitration, read the collective bargaining agreement, which controlled the outcome of the arbitration, and which provided an irrelevant part that Gurman could not engage in slowing down activity at the site or encouraging others to slow down activity at the site. So he read that in the collective bargaining agreement, and he found that Gurman did, in fact, engage in that activity. But importantly to this deferral issue, that's all he found. And if you read that arbitration decision, you'll see that he specifically refused to factor into his analysis the question of whether CalMet's allegedly legitimate reasons for suspending Gurman were pretextual, i.e., he refused to factor into his analysis the question of CalMet's intent. But that question is essential to a determination of whether CalMet violated the star. So it was far from clear that the — that Gurman's claims and rights under the star were considered by the arbitration. And under the abuse of discretion standard, it — the Court is faced not only with an abuse of discretion standard, which is very deferential, but also a statement that it has to be clear. So that's too — it's a deferential standard on top of a deferential standard, which makes, you know, the ARB's findings in this regard pretty heavy. And the fact that I've explained to the Court why that the ARB's decision makes sense, that should only convince the Court further that the ARB acted correctly here. Moreover, the arbitration record was not even, and I'm quoting from the Barantine decision, which we cite in our brief, it wasn't even adequate with respect to the discrimination issue. In order to have determined that CalMet's alleged reasons for suspending Gurman were pretextual, the ALJ and later the ARB had to delve deeply into the question of whether CalMet's investigation into Gurman was or was not legitimate. The best evidence of that came from Jeffrey Dyer, who was the individual who conducted the investigation for CalMet. He testified at the — at the Steyr hearing. His notes and the notes of his assistant were entered into evidence at the Steyr hearing. So CalMet knew the importance of this testimony and the notes, and the notes were taken contemporaneously with the investigation. CalMet knew the importance of this testimony and the notes to the resolution of the issues, legal and factual issues, before the stock. But the testimony and notes were not entered into evidence at the arbitration. And, in fact, CalMet had Dyer testify for four out of five days during this Steyr hearing, but didn't put him on during the arbitration at all. So from that, it can be — it was far from clear that the arbitration addressed the factual and legal issues that are necessary to be resolved in a stock case. I can — I'll now just address CalMet's final argument, which is — deals with the hearsay objections. CalMet asserts that the ARB abused its discretion on some evidentiary issues. It bases this argument on three discrete pieces of testimony, two of which relate to the question of disparate treatment and one of which relates to the question of — more generally to the question of pretext. This third piece of testimony, the judge specifically stated she was not relying on this testimony in her decision. And that's on — I'll just find that for Your Honors. That's the Winkler testimony. Let's see. It's around page 38. Actually, it is on page 38 of the decision. The judge said she was not relying on any of that testimony. Where is that again? Testimony of Jeffrey Winkler, right in the middle. Oh, okay. Yeah. A second paragraph in that little section. None of what Winkler's testimony is given any weight in evaluating the issue as to the pre-5198 oral suspension and the events prior to written 52298 suspension. And under the — under the standard, which are — the rules of evidence state that if the judge does not rely on a piece of testimony that is admitted in error, there's no — there's no — there's no — the error is harmless and there's no reversible error there. As to all three pieces of testimony, anyway. She did rely on the testimony of Buckley, page 37? She did rely on the testimony of Buckley. But as we point out in our brief, that testimony is not hearsay. Buckley testified that, to his knowledge, no employee had ever — the employee that purportedly made comments to him had not been suspended. To his knowledge, it's not hearsay. There's no — there's no statement other than one made by the declarant. Now, the testimony of Robert Sangle, he did testify that some — a supervisor came up to him and said, yes, you know, this supervisor told me that Darryl Lewis, who was the individual who reportedly accosted him, that supervisor — that Darryl Lewis — that supervisor told me Darryl Lewis was not suspended. That's hearsay. The ARB found that was hearsay. But it found it was not — that the hearsay was — the admission of that hearsay was harmless error because there was corroborative evidence showing that that hearsay testimony was reliable. Darryl Lewis, who I've mentioned, testified he was not suspension — suspended as a result of — of the altercation. So what better type of reliable evidence could there be except from the person who — who reportedly was or was not suspended? So Calamit's arguments regarding this — this alleged hearsay, one of — only one of which was not relied upon by the judge, one of which was not hearsay, and the other which was hearsay, those arguments lack merit, as we point out in our briefing I've pointed out here. Moreover, Calamit ignores — and the other standard, as Mr. Monk pointed out, is whether the testimony materially contributed to the judge's findings, that Calamit's allegedly — whether there was material contribution to the judge's findings. And the issue is whether it materially contributed to the judge's findings that Calamit's reasons for suspending Gurman were pretextual. Calamit ignores that the ALJ and later the ARB relied on a host of evidence which is contained in the ALJ's decision to which Calamit and which we summarized for the Court in — in a — in — let me find the exact page. I believe it's page — yeah. Starting on page 13 of our brief, we summarize in bullet-format the judge's major findings, some of them because the judge made multitudinous findings here and there was — there was no room just to summarize all of them, but the basic findings. Calamit ignores that the ALJ relied on a host of evidence to make her disparate treatment findings. Indeed, Calamit ignores that a lot of this undisputed evidence was disparate treatment evidence, some of which was the testimony of Calamit's own witness. So in all three questions that were before the Court, the ARB made no error here. And I ask the Court to affirm the final order of the Administrative Review Board. Thank you. Thank you. May it please the Court. I'd like to just briefly address each of the three issues. Your Honor, in answer to your question, I believe that it is not possible in a single case to use both a mixed motive analysis and a pretext analysis. They are simply inconsistent. And again, you heard counsel argue two minutes ago that this indeed is a pretext case. In a pretext case, the final burden shifts to the employee to show that the employer's proffered valid reason was pretextual. And that simply didn't happen in this case. If you look at our reply brief at page 6, let me just read a series of holdings that are at the guts of this decision that show that the ALJ indeed shifted the burden to the employer, which is reversible error, again, under the cases I cited. Again, this is from page 6 of our reply brief. Where the evidence of dual motive exists, the employer bears the burden of establishing by a preponderance of the evidence it would have taken the adverse employment action in the absence of the employee's protected activity. There's one example. Gurman could prevail if CalMAT fails to show by a preponderance of the evidence it would have taken the same actions even in the absence of the protected activities. Again, placing the burden on the employer. Another one. As on a dual motive analysis, such must be known and considered to determine if the employer's burden of persuasion is met. And the final one that I will read from in our brief, reply brief page 6. The record in its entirety does not persuade by a preponderance of the evidence that Gurman's protected activities did not play a part in CalMAT's decision, again, imposing the burden on CalMAT. So it can't be both. Clearly it was improperly placed on the employer here. Now, the Costa case is a red herring. Costa deals with how we address a mixed motive case, and indeed, must you have circumstantial evidence or direct evidence? That's all very interesting and academic, but it doesn't apply to this case because this is a pretext case. And it was simply handled wrongly. It should be retried. Now, let me briefly also address the deferral to the arbitration. Counsel indicated that it was clear the arbitration did not deal with the safety issue. Well, on the contrary, the issue was dealt with at some length, and I quote from our reply brief again, page 16, and let me just quote a little bit of the testimony. Question. This is Gurman himself testifying on the stand. This is at the arbitration, which supposedly didn't deal with the safety issue. Question. Have you contacted, I believe you said you contacted outside agencies regarding problems or safety issues at CalMAT. Answer. Yes. Do you feel that the company has unfairly singled you out because of your activities as a union steward? Answer. Yes. Then he goes on to say, since I have filed the CHP complaint, I believe I have been a marked man. The CHP came in, and they filed, you know, they filed the company. The company admitted they were in violation. It was a contract issue or whatever, and they're supposed to check back. Then I filed, I guess it's a whistleblower's complaint, and that has been turned down by the OSHA department. This was the heart of his case in arbitration. And again, the deferral doesn't require the same legal issue. The legal issue before the Department of Labor was, was he suspended for reporting to the CHP? The legal issue in the arbitration was, was he discharged for good cause? But the ---- You're going to be recorded. You have to kind of stay where you are. Thank you, Your Honor. But the arbitration necessarily must have decided that, indeed, he wasn't fired for the CHP report. Otherwise, it would have been a discharge without just cause. So clearly, they dealt with the same factual issue. Indeed, you will notice that the Department of Labor brief at page 44 acknowledges that the company panelists of the three-member arbitration board and the union panelists both discussed Gurman's over-hours complaints in the decision. So it was clearly a part of this. They simply rejected the argument. As a final issue, I would just say on the Buckley testimony, counsel has acknowledged it was used, it was relied upon, it materially contributed. And the only evidence that there was ever any racial slur directed to Buckley, and, indeed, that the person addressing that racial slur was not suspended, is Buckley's own testimony. Now, he can't know about someone else's suspension other than hearing it by hearsay. And then, obviously, his remark reporting the racial slur is hearsay as well. So, again, for each of these three arguments, we believe that this case should be either reversed and tried again if you grant merit to the first two arguments, or if you believe that, indeed, the Department of Labor's strong, strong national policy to defer to arbitration was, indeed, not done this time. And if you believe, which I think the briefs clearly show, that it dealt with a very factual issue. The core of that arbitration was, was this employee fired because of his reporting actions to the CHP? And a three-panel arbitration decision said, no, that wasn't the reason. And for all those reasons, we would hope that this decision would be vacated and dismissed as being deferred to the arbitration. And in lieu of that, Your Honors, reverse for another proceeding. I thank you very much. Can the government be held responsible for private arbitration when the government is not a party? Well, it is their own policy, Your Honor, to defer to such an arbitration. I understand. I understand. But are they bound by it? I don't know that they're. They can exercise discretion. That's. They're bound by it. That's the issue. No, but I think they're bound to follow their own regulations if, indeed, they are met factually. And I believe in this case they were met factually, Your Honor. Okay. Thank you very much. All right. The matter stands submitted. And we'll recess until.
judges: B. Fletcher, Pregerson, Ferguson